**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELVIS JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-6378** |
| **N. BURL CAIN, WARDEN**<br>**LOUISIANA STATE PENITENTIARY** | **SECTION "R"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C),** and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

**I.      Factual Background**

The petitioner, Elvis Johnson ("Johnson"), is an inmate currently incarcerated in the Louisiana State Penitentiary, Louisiana.[2] On September 24, 1994, Johnson was indicted by a Grand

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

Jury in Orleans Parish on eight counts:[3] Count 1, second degree kidnapping of T.H.; Count 2, aggravated rape of T.H.; Count 3, armed robbery of T.H.; Count 4, aggravated crimes against nature against T.H.; Count 5, second degree kidnapping of D.H.; Count 6, attempted second degree murder of D.H.; Count 7, aggravated rape of D.H.; and Count 8, aggravated crimes against nature against D.H.

The record reflects that, at around 3:30 a.m. on July 4, 1994, T.H. was returning home after getting medicine for her child and beer from a grocery store three blocks from her home.[4] A man, later identified as Johnson, approached and asked if she needed anything from him. T.H. said no and Johnson pulled out two knives. He put the knives to her neck and told her to walk with him and that he would kill her if she screamed.

Johnson forced T.H. to jump a fence into a garden at the New Orleans General Hospital. Johnson told her to remove her clothes and as she did, he took her watch and wallet. Johnson then raped her and forced her to perform oral sex on him. He then took her clothes and fled. He threatened her life if she moved. T.H. borrowed a sheet from a friend who lived nearby and ran home, where she called the police.

T.H. gave a description of Johnson to the police. She also identified her slippers left at the scene and the watch Johnson took from her. She was also able to identify Johnson in a photographic lineup and at trial.

---

[3]St. Rec. Vol. 1 of 4, Indictment, 9/29/04. Although the names of the adult victims were published in the original indictment, the later state court pleadings referenced the victims by their initials for the sake of privacy, in light of the offensive nature of the crimes committed against them.

[4]The facts of the case were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal on direct. St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 98-KA-0990, 12/29/99; *State v. Johnson*, 761 So.2d 821 (La. App. 4th Cir. 2002) (Table).

At 2:30 a.m. on July 27, 1994, Morris Lewis, Johnson's brother-in-law, called the police after hearing moaning coming from Johnson's bedroom. Johnson was living with Lewis and his wife at the time. When officers arrived, Lewis led them to the bedroom. The officers knocked on the door and announced themselves. Johnson opened the door and quickly slammed it closed. The officers drew their guns and ordered Johnson to open the door. He complied. Johnson was nude and a black female, later identified as D.H., was sitting on the corner of the bed. She too was nude and wrapped in a sheet. Her head had been shaved and her jaws were swollen. She also had welts on her back. She could barely speak and appeared to be in pain.

D.H. told the officers that Johnson had raped her vaginally and anally and forced her to perform oral sex on him. She also told the officers that Johnson beat her and sexually assaulted her with the wooden handle of a toilet plunger. She told the officers that she was having severe stomach pain and asked to use the bathroom. An officer assisted her to the bathroom, where she collapsed.

An emergency medical unit was called, and D.H. was taken to Charity Hospital. She underwent emergency surgery to repair a hole in her large intestine, which was consistent with a blunt object being inserted into her rectum with considerable force.

The officers seized several items from Johnson's room, including blood and semen samples, D.H.'s hair shavings, T.H.'s watch, a beer bottle, and the broken wooden handle.

The matter was first called to trial before a jury on August 25, 1997.[5] After the State introduced certain photographs, the Trial Court granted a defense motion for mistrial.[6]

---

[5]St. Rec. Vol. 1 of 4, Trial Minutes, 8/25/97.

[6]*Id.*

On November 18 and 19, 1997, Johnson was again brought before a jury for trial on the first seven counts.[7]  The State moved for severance of the eighth count, crimes against nature against D.H., prior to trial.[8]  After two days of trial, the jury returned a verdict of guilty as charged on each of the seven counts.[9]

The State thereafter filed a multiple bill on November 28, 1997, alleging that Johnson was a second felony offender.[10]  On December 1, 1997, Johnson's counsel also filed motions for post verdict judgment of acquittal and for new trial.[11]

At a hearing held on December 5, 1997, the Trial Court determined that Johnson was a second felony offender.[12]  The Trial Court sentenced him to serve 40 years in prison each on Counts 1 and 5, life imprisonment on each of Counts 2 and 7, 15 years in prison on Count 4, 50 years in prison on Count 6, and 99 years in prison as a second offender on Count 3.  The Court ordered that the sentences on Counts 1, 2, 3, and 4 run concurrent with each other and consecutive to the sentences imposed on Counts 5, 6, and 7, which also were to run concurrent to each other.  The Court also ordered that the sentences on Counts 2, 3, 6, and 7 were to be served without the benefit of parole, probation, or suspension of sentence.

---

[7]St. Rec. Vol. 1 of 4, Trial Minutes (2 pages), 11/18/97; Trial Minutes (2 pages), 11/19/97; St. Rec. Vol. 2 of 4, Trial Transcript, 11/18/97; Trial Transcript, 11/19/97.

[8]St. Rec. Vol. 1 of 4, Trial Minutes (2 pages), 11/18/97.

[9]St. Rec. Vol. 1 of 4, Trial Minutes (2 pages), 11/19/97; Jury Verdicts, Counts 1-7, 11/19/97.

[10]St. Rec. Vol. 1 of 4, Multiple Bill, 11/28/97.

[11]St. Rec. Vol. 1 of 4, Motion for Post Verdict Judgment of Acquittal, 12/1/97; Motion for New Trial, 12/1/97.

[12]St. Rec. Vol. 1 of 4, Multiple Bill Hearing Minutes, 12/5/97; St. Rec. Vol. 2 of 4, Sentencing and Multiple Bill Hearing Transcript, 12/5/97.

On appeal to the Louisiana Fourth Circuit Court of Appeal, Johnson raised six grounds for relief:[13] (1) insufficient evidence to establish that he was armed when he attacked T.H.; (2) the Trial Court erred when it admitted T.H.'s references to impermissible other crimes evidence; (3) the sentences were excessive; (4) the Trial Court erred when it allowed the officers to testify as to the impermissible hearsay of D.H.; (5) insufficient evidence to prove that he had specific intent to kill D.H.; and (6) the Trial Court erred when it allowed the doctor to testify about medical reports on D.H. that he did not prepare.

After the appeal was lodged, on January 11, 1999, the Louisiana Fourth Circuit issued an order directing the Trial Court to rule on Johnson's motions for post verdict judgment of acquittal and for new trial filed on December 1, 1997.[14] The Court ordered the Trial Court to do so within 30 days of the order. The Trial Court complied on January 27, 1999, and denied the motions.[15]

On December 29, 1999, the Louisiana Fourth Circuit affirmed Johnson's conviction, finding no merit to five of his claims and finding that he did not preserve the excessive sentence issue for appeal as required under La. Code Crim. P. art. 881.1.[16] The Court also determined that the record contained three patent errors.

First, the Court found that the Trial Court erred in failing to rule on the motions for post verdict judgment of acquittal and for new trial prior to the sentencing. The Court determined that the sentences must be vacated and the matter remanded for resentencing.

---

[13]St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 98-KA-0990, 12/29/99; *State v. Johnson*, 761 So.2d at 821.

[14]St. Rec. Vol. 1 of 4, 4th Cir. Order, 98-KA-0990, 1/11/99.

[15]St. Rec. Vol. 1 of 4, Minute Entry, 1/27/99.

[16]St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 98-KA-0990, 12/29/99; *State v. Johnson*, 761 So.2d at 821.

Second, the Court found that Trial Court failed to direct that the sentences on Counts 4 and 5 be served without benefit of parole, probation, or suspension of sentence, rendering these sentences illegally lenient. However, since the error was favorable to Johnson, it would not be corrected on appeal because it was not raised by the State.

Finally, the Court determined that the 50 year sentence on Count 6 was illegally excessive. The Court determined that the Trial Court erred when it restricted Johnson's right to parole, probation, or suspended sentence on that sentence. The Court found this contrary to the sentencing statute in place at the time of the offense in 1994. As a result, the Court vacated the sentences and remanded the matter for resentencing on all seven counts.

The Trial Court resentenced Johnson on June 9, 2000.[17] The Court sentenced Johnson to serve the same sentence terms previously imposed on Counts 1, 2, 3, 4, 5, and 7, without benefit of parole, probation, or suspension of sentence. As to Count 6, the Court resentenced him to serve 50 years in prison with benefits and to run consecutive to the other sentences.[18]

Johnson did not seek further review of these sentences nor did he pursue further review of the affirmation of his conviction by the Louisiana Fourth Circuit. *Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, so the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)). His conviction therefore became final on June 16, 2000, which was five business days after his re-sentencing. *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law,

---

[17]St. Rec. Vol. 4 of 4, Minute Entry, 6/9/00.

[18]*Id.*

6

a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process); *see Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914[19]); La. Code Crim. P. art. 13 (weekends and holidays not included in calculation of period less than seven days).

## II.   Procedural History

The record reflects that Johnson attempted to submit an application for post conviction relief to the Trial Court on August 20, 2001.[20] On March 19, 2002, Johnson filed a writ application with the Louisiana Fourth Circuit apparently complaining that he had not received a ruling from the Trial Court on the application for post conviction relief.[21] On May 9, 2002, the Louisiana Fourth Circuit, granted the writ for the purpose of transferring the matter to the Trial Court to consider the application for post conviction relief.

On October 25, 2002, Johnson filed a second writ application with the Louisiana Fourth Circuit, alleging that the Trial Court still had not ruled on his application for post conviction relief.[22] The Court denied the application on November 27, 2002, indicating that "[o]n May 14, 2002, the

---

[19]At the time of the conviction, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 rendered the conviction and sentence final at the expiration of that period. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985). Article 914 was later amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal.

[20]The record does not contain a copy of this application since the Trial Court was never able to locate the same in their own record. *See* St. Rec. Vol. 3 of 4, 4th Cir. Order, 2002-K-2165, 11/27/02. Johnson presented the state court with a copy of the certified mail receipt bearing the date August 20, 2001 as proof that he tried to file the application. St. Rec. Vol. 4 of 4, Inmate Request for Legal/Indigent Mail, 8/20/01.

[21]The record does not contain a copy of this writ application. The filing date was obtained by the Court from the records of the clerk of the Louisiana Fourth Circuit. *See also*, St. Rec. Vol. 3 of 4, Verification Letter (4th Cir.), 3/17/06.

[22]St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2002-K-2165, 10/25/02.

district court notified this court that it could not comply with the order issued in writ 2002-K-0531 because it could not locate relator's application for post-conviction relief."[23]  The Court advised Johnson to resubmit his application to the Trial Court.[24]

The record reflects that Johnson may have attempted to mail another application for post conviction relief to the Trial Court on December 10, 2002.[25]  On May 19, 2003, Johnson filed another writ application with the Louisiana Fourth Circuit alleging that the Trial Court had not ruled on the application for post conviction relief.[26]  The Court denied the writ application on July 3, 2003, finding that the Trial Court record did not contain a copy and no copy had been provided to it.  The Court resolved that it had nothing to review.[27]

On January 27, 2004, Johnson filed another writ application with the Louisiana Fourth Circuit.[28]  The Court granted the application on March 24, 2004, for the purpose of transferring Johnson's Motion to Correct an Illegal Sentence to the Trial Court for consideration.[29]  The Trial Court denied Johnson's motion on April 13, 2004, as repetitive, moot, and otherwise meritless.[30]

---

[23]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2002-K-2165, 11/27/02.

[24]*Id.*

[25]St. Rec. Vol. 4 of 4, Inmate's Request for Legal/Indigent Mail, 12/10/02.

[26]St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2003-K-0918, 5/19/03.

[27]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2003-K-0918, 7/3/03.

[28]The record does not contain a copy of this writ application.  The filing date was obtained by the Court from the records of the clerk of the Louisiana Fourth Circuit.

[29]The record does not contain a copy of this order.  The issuance date was obtained by the Court from the records of the clerk of the Louisiana Fourth Circuit.  The basis of the order is addressed in the Trial Court's subsequent order.  St. Rec. Vol 3 of 4, Minute Entry, 4/13/04.

[30]St. Rec. Vol 3 of 4, Minute Entry, 4/13/04.

The Louisiana Fourth Circuit denied Johnson's subsequent writ application.[31] The Court held that the Trial Court properly ruled on his post-trial motions and that there was no application for post conviction relief in the Trial Court's record.[32]

On July 2, 2004, Johnson filed another writ application in the Louisiana Fourth Circuit, again alleging that he submitted an application for post conviction relief to the Trial Court and no ruling had been made.[33] The Court denied the writ application noting that there was no application for post conviction relief in the trial court record.[34] The Court also noted that the application reasserted Johnson's contention that the Trial Court erred in sentencing him after having granted a new trial. The Court acknowledged that the claim had been previously rejected and denied the application as repetitive pursuant to La. Code Crim. P. art. 930.3.

Johnson filed his first and only writ application with the Louisiana Supreme Court on October 22, 2004, raising two grounds for relief:[35] (1) the Trial Court erred in sentencing him as a multiple offender when an order granting a new trial was in effect; and (2) trial counsel was in conflict of interest and therefore there was ineffective assistance of counsel. The Court denied the application without reasons on August 19, 2005.[36]

---

[31]St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2004-K-0778, 5/10/04.

[32]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2004-K-0778, 6/3/04.

[33]St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2004-K-1113, 7/2/04.

[34]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2004-K-1113, 9/10/04.

[35]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 04-KH-2624, 10/22/04; Verification Letter (La. S. Ct.), 3/16/07.

[36]*State ex rel. Johnson v. State*, 908 So.2d 679 (La. 2005); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2004-KH-2624, 8/19/04.

**III.     Federal Petition**

On December 14, 2005, Johnson filed a petition for federal habeas corpus relief in which he alleged two grounds for relief:[37] (1) he was denied due process and a fair trial when the court arbitrarily proceeded with sentencing and habitual offender proceedings after ordering a new trial; and (2) he was denied a fair trial, the right to effective assistance of counsel, and due process because of counsel's conflict of interest.  The State filed a response in opposition to Johnson's petition, alleging that the petition was not timely filed.[38]

**IV.     Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[39] applies to Johnson's petition, which is deemed filed in this Court under the federal mailbox rule on October 20, 2005.[40]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

---

[37]Rec. Doc. No. 1.

[38]Rec. Doc. No. 17.

[39]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[40]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Johnson's petition on December 14, 2005, when the filing fee was paid.  Johnson dated his signature on the petition on October 20, 2005.  This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State argues that Johnson's petition was not timely filed. A review of the record reflects that the State is correct.

## V. Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[41] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As set forth above, Johnson's conviction became final on June 16, 2000, when he failed to seek reconsideration or pursue further review after the re-sentencing ordered by the Louisiana Fourth Circuit on direct appeal.

The State argues that Johnson's conviction became final on January 28, 2000, which was 30 days after the Louisiana Fourth Circuit ruled on direct appeal and he did not file for review in the Louisiana Supreme Court. The State's determination of finality is incorrect. *Burton*, 549 U.S. at 147. The United States Supreme Court has held that "'[f]inal judgment in a criminal case means

---

[41]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

sentence. The sentence is the judgment.'" *Burton*, 549 U.S. at 798-99 (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)).

In *Burton*, the Court resolved that a conviction does not become final, thus a judgment is reviewable under § 2254, until both the conviction <u>and</u> sentence are final. *Id.*, at 799. The Supreme Court concluded that the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review. . .'" *Id.*, at 799 (quoting 28 U.S.C. § 2244(d)(1)(A)). In this case, these delays ran five days after the resentencing, not 30 days after the appellate court's opinion as suggested by the State.

Therefore, under the plain language of § 2244, Johnson had until June 16, 2001, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Johnson's § 2254 petition as of that date, unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a State post conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). The United States Court of Appeals for the Fifth Circuit has clarified its prior opinions and

resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 2001 WL 995164, slip op. at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). To constitute a "pertinent judgment or claim" the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, Johnson's AEDPA filing period began to run on June 17, 2000, the day after his conviction became final. The filing period ran for 365 days, until Saturday, June 16, 2001, or Monday, June 18, 2001, when it expired. Johnson had no other properly filed state post-conviction or other collateral review pending during this time period. Johnson concedes that he did not attempt

to submit his first application for post conviction review until August 20, 2001. This was two months after the AEDPA filing period expired and therefore does not entitle him to any other tolling under the AEDPA. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

Johnson's federal petition, filed on October 20, 2005– over four years and four months after the filing period– is deemed to have expired on June 18, 2001. Johnson's petition must be dismissed as untimely.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Elvis Johnson's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 23rd day of September, 2008.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**